UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BHL BORESIGHT, INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00627 |
| | § | |
| GEO-STEERING SOLUTIONS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending in the above-referenced cause are the following Defendants' Motions to Dismiss: Statoil Gulf Services LLC ("Statoil") and Alfonso Zaza's ("Zaza"), Doc. 230; Geo-Steering Solutions, Inc. and Geo-Steering Solutions USA, Inc. (collectively, "GSSI"), Doc. 232; Pleasant Solutions, Doc. 246; Neil Tice ("Tice"), Doc. 259; Darrell Joy ("Joy"), Doc. 317; and Byron Molloy ("Molloy"), Docs. 333, 334. Molloy's Opposed Motion to Strike Arguments from BHL Boresight's Sur-Reply is also pending. Doc. 357. After considering the Motions, the Court denies Molloy's Motion to Strike, and grants in part and denies in part Defendants' Motions to Dismiss for the reasons that follow.

## I. Background

Because the facts of this case have been extensively recited in this court's prior Opinion and Order, Doc. 140, the Court only recites what is necessary to understand the context in which the present motions arose.

The parties in this case dispute the source of Defendant GSSI's geosteering software, Geo-Direct. Plaintiff BHL contends that Defendants unlawfully used its proprietary software to develop Geo-Direct. As a result, BHL initiated this suit against Defendants GSSI and Statoil on March 10, 2015. Doc. 1.

In its Original Complaint, BHL asserted claims against Statoil and GSSI for violations of the Computer Fraud and Abuse Act ("CFAA"), Electronic Communications Privacy Act ("ECPA") (Counts I–III), unjust enrichment (Count V), and civil conspiracy (Count VIII). *Id.* ¶¶ 28–51, 60–64, 77–80. BHL also alleged misappropriation of trade secrets (Count IV) and civil theft (Count VII) against GSSI and breach of contract (Count VI) against Statoil. *Id.* ¶¶ 52–59, 65–76. GSSI responded by asserting counterclaims against BHL for: request for declaratory judgment of independent creation of the GSSI software (Count I), request for declaratory judgment that the GSSI software is an original work (Count II), request for declaratory judgment that GSSI did not copy BHL's software in creating GSSI's software (Count III), Lanham Act violation (Count IV), common law unfair competition (Count V), state antitrust violation (Count VI), tortious interference with existing contract (Count VII), and tortious interference with prospective business relationships (Count VIII). Doc. 19 at ¶¶ 10–56. The parties filed cross motions to dismiss and on March 29, 2016, this Court dismissed BHL's ECPA and unjust enrichment claims and GSSI's state antitrust, tortious interference with existing contract, and tortious interference with prospective business relationships counterclaims without prejudice. Doc. 140.

After receiving permission from the Court, BHL filed its First Amended Complaint ("FAC") on August 29, 2016, in which it amended its claims and added additional Defendants Pleasant Solutions, Joy, Tice, Molloy, and Zaza. Doc. 209-1. All Defendants responded by filing the pending Motions to Dismiss. Docs. 230, 232, 246, 259, 317, 334. These Motions are now ripe for consideration.

## II. Motions to Dismiss for Lack for Personal Jurisdiction

Two Defendants, Molloy and Pleasant Solutions, attack their inclusion in this suit with

their Motions to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule 12(b)(2). Because jurisdictional matters must be resolved first, the Court begins with these Motions. *See, e.g., United States v. Tex. Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("[C]ourts must . . . decide issues of personal jurisdiction before ruling on the merits.").

### A. Legal Standard

The Due Process Clause of the Fourteenth Amendment precludes a federal court from assuming personal jurisdiction over a nonresident defendant "unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Such contacts can give rise to either general or specific jurisdiction. *Id.* Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. This case presents only the question of specific jurisdiction.

The Fifth Circuit has reduced the specific-jurisdiction inquiry into a three-step analysis: "'(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Id.* (quoting *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "The 'minimum contacts' inquiry is

fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Luv N' Care*, 438 F.3d at 470). Thus, a defendant may not be haled into a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (citing *Electrosource, Inc., v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir. 1999)).

In addition to meeting due-process requirements, a federal court's exercise of personal jurisdiction must satisfy the requirements of the forum state's "long-arm" statute. *Clemons v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Latshaw v. Johnston*, 167 F.3d 2008, 2011 (5th Cir. 1999)). Texas's long-arm statute, however, is coextensive with the Due Process Clause. *Id.*

When faced with a motion to dismiss for lack of personal jurisdiction, the court may consider admissible affidavits and other materials. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). In the absence of a full and fair evidentiary hearing, however, a plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting material. *Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395, 1995 WL 450209, at *5 (5th Cir. 1995) (unpublished) (citing *Thompson*, 755 F.2d at 1165). "Prima facie" means "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary 1310 (9th ed. 2009).

"To decide whether a prima facie case exists, [the court] must accept as true [the plaintiff's] 'uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Nuovo Pignone*, 310 F.3d at 378 (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000)). This

general rule of resolving conflicts in favor of the plaintiff only applies to affidavits and other admissible evidence, however, not merely allegations. *Cooper*, 62 F.3d 395 (citing *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993)).

## B. Objections

As the law makes clear, the procedural posture of the case is important; at this early stage, the Court need not decide whether BHL has proven its contentions, only whether, resolving conflicts in the affidavits in its favor, it has made a prima facie case for personal jurisdiction. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). Before the Court may do so, however, it must address a number of objections to the parties' declarations.

 In this case, both parties submitted materials to support their positions. BHL objects to Molloy's Declaration and Pleasant Solutions CEO Thomas Stachura's Affidavit on the grounds that both contain assertions that are irrelevant, hearsay, conclusory, have little probative value, and/or go beyond the issue of personal jurisdiction. Docs. 278, 347. The Court addresses the objected-to submissions in turn.

### i. *Stachura Affidavit*

Specifically, BHL argues that the Stachura Declaration should be disregarded because Stachura lacks personal knowledge about communications between Pleasant Solutions employees and GSSI, making his statements about interactions between GSSI and Pleasant Solutions hearsay. Doc. 278 at 12–13. BHL further argues that Stachura's Declaration has little probative value because he is an interested witness offering conclusory statements. *Id.* at 14–15. While BHL requests that the Court disregard the Affidavit in its entirety, BHL only identifies four allegedly problematic statements:

- "Pleasant Solutions has no regular, continuous, systematic contact with the State of Texas" (Stachura Aff. ¶ 9);

- the GSSI Defendants "did not inform Pleasant Solutions where it intended to market the software once Pleasant Solutions completed the development." (Aff. ¶ 19);
- "At no time did any employee of Pleasant Solutions knowingly receive a live demonstration . . . ." (Aff. ¶ 26); and
- Pleasant Solutions did not "knowingly acquire any information that was designated, marked or labeled as confidential and proprietary belonging to BHL or any third party, nor any information which it could reasonably have known, based on industry standards, is confidential to third parties"(Aff. ¶ 28).

The Court sustains BHL's objections to the first statement, although it fails to see what strategic advantage BHL gains thereby. BHL argues that the first statement is a "conclusory and legalistic argument that is no substitute for specific facts." Doc. 278 at 14. The Court agrees that the statement contains a legal conclusion, however, Stachura testifies in prior paragraphs that Pleasant Solutions has no offices; phone numbers or addresses; employees, officers, directors, agents, or representatives; or property or security interests in Texas and has never conducted business in the state. *See* Doc. 247 at ¶¶ 4–6. In doing so, he provides the proper factual support for Pleasant Solutions' contention that it lacks the necessary contact with Texas to support jurisdiction.

The Court next finds unpersuasive BHL's argument that the Affidavit should be disregarded because Stachura is an interested witness. The cases that BHL cites in support of this contention are nonbinding and easily distinguishable, and as Pleasant Solutions astutely points out, "the individuals who have the personal knowledge necessary to give affidavits about disputed facts in cases like this simply happen to be the employees or officers of such entities." Doc. 390 at 8–9.

Finally, the Court overrules BHL's objection to the last three statements on hearsay grounds. Nowhere in these three statements does Stachura aver that he based this knowledge on what third parties told him. Furthermore, as CEO of the company, he is certainly capable of

making a statement based on his own personal knowledge and experience regarding the extent of the relations between the companies. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009) (concluding that defendant company's managing director's statement that the company "at no time . . . ever assisted Defendant West–Hem in negotiating a price for the blueprints with Anthony DiLorenzo, and did not decide, alone or together with anyone, what Defendant West–Hem should pay Mr. DiLorenzo for those blueprints" was a factual statement based on personal knowledge, not hearsay).

### ii. *Molloy Declaration*

BHL renews the hearsay and lack-of-personal-knowledge arguments it leveled at Stachura's Affidavit against Molloy's Declaration, but it further argues that a number of Molloy's statements are conclusory and that, as a whole, the Declaration is improper because it addresses more than jurisdictional issues. Doc. 347. BHL points to the following statement as hearsay: "I learned that Boresight and Myall Hawkins, Boresight's attorney, contacted my employer Chinook Consulting Ltd. in Canada, to locate me and discuss this lawsuit against me. I also learned that Mr. Hawkins actually visited Chinook in Canada to discuss my role in this lawsuit." Doc. 334-1 ¶ 31.

The Court agrees with BHL that this statement constitutes hearsay; however, yet again, BHL's victory is hollow because this statement is irrelevant to the 12(b)(2) analysis. Contrary to Molloy's assertion that "[*e*]*verything* in [his] declaration pertains to the issue of personal jurisdiction" and is "directly relevant to proving that [he] was merely a *peripheral* player," Doc. 391 at 11, the Court fails to see how an alleged visit to Canada by BHL's counsel has any bearing on whether Molloy himself has the necessary minimum contacts to sustain personal jurisdiction.

BHL also calls out Molloy's statements regarding his relationship with Cody Hembree[1] as conclusory. Doc. 347 at 13–14. Like Molloy's statements regarding Chinook, however, the Court does not believe these statements are relevant to the 12(b)(2) analysis.

BHL points to a number of other statements in Molloy's Declaration that it argues go beyond the scope of personal jurisdiction and, from there, argues that the entire Declaration should be disregarded. *Id.* at 14–16. As already discussed, the Court agrees that some of Molloy's statements are of limited relevance in the context of his 12(b)(2) motion. Nevertheless, a number of Molloy's assertions do indeed go to the heart of the personal-jurisdiction dispute. Specifically, Molloy's statements regarding his role within GSSI and his participation in the development of the GSSI software are relevant to the question of whether Molloy purposefully availed himself of the forum such that he should be anticipated being haled into court here.

Moreover, just because not all of the statements are relevant to the 12(b)(2) analysis, the Court need not disregard the entire affidavit. The Court is well-versed in what can and cannot be considered in the context of Rule 12 motions and rather than disregard the entire Affidavit, simply disregards the allegations not relating to personal jurisdiction in its evaluation of the 12(b)(2) motion.

### C. Analysis

Objections aside, the Court now turns to the dispositive question presented by Pleasant Solutions and Molloy's Motions to Dismiss: whether specific jurisdiction exists.

### i. Purposeful Availment

The specific-jurisdiction analysis begins with a determination of whether the defendant

---

[1] For example, Molloy states: "I was never Cody Hembree's friend. I knew him as the sales person for GSSI, and in that relationship he was barely an acquaintance. We have only met one time in person, and we do not exchange phone calls (he doesn't even have my number)." Doc. 334-1 ¶ 29.

has the requisite "minimum contacts" with the state. *Luv N' Care*, 438 F.3d at 469. To make this determination, the Court "must identify some act whereby [the defendant] 'purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws.'" *Id.* at 469–70 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

One way to establish "purposeful availment" for minimum-contacts analysis is under the stream-of-commerce theory. *Luv N' Care*, 438 F.3d at 470. Under this theory, when a non-resident defendant introduces a product into the stream of commerce and thereby benefits from the product's final sale within the forum, he has purposefully availed himself of the forum. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 374 n.9 (5th Cir. 2010) (collecting cases). "Generally, parties invoke and courts rely on stream-of-commerce theory where the defendant does not intentionally direct its product to a forum, but rather places the product in the stream of commerce which eventually brings the product to the forum." *Maxum Indem. Co. v. BRW Floors, Inc.*, 5:15-CV-00167-RCL, 2015 WL 5881584, at *5 (W.D. Tex. Oct. 7, 2015) (citing *Nuovo Pignone*, 310 F.3d at 381; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926, 131 S. Ct. 2846, 2855, 180 L. Ed.2d 796 (2011)).

There are two variations of the stream-of-commerce theory that have emerged from Supreme Court jurisprudence. *Choice Healthcare*, 615 F.3d at 373 & n.7. The Fifth Circuit has consistently rejected the "stream-of-commerce-plus theory" in favor of the more relaxed "mere foreseeability" test. *Id. See also In re Chinese Manufactured Drywall Prods. Liability Litig.*, 742 F.3d 576, 586 (5th Cir. 2014)). Under this interpretation:

> As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor would the litigation present a burden for which there is not corresponding benefit. A defendant who has placed goods in the stream of

commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State or engages in additional conduct directed toward that State.

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 117, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) (Brennan, J., concurring).

### a) Pleasant Solutions

Here, BHL argues that Pleasant Solutions developed GSSI's Geo-Direct software with the knowledge that the software was based on BHL's product and the end product would be marketed and sold to Texas oil-and-gas companies. Doc. 278 at 17. Specifically, BHL alleges that the evidence shows that Pleasant Solutions:

- was/is in possession of screenshots of BHL's Boresight geosteering Software that the GSSI Defendants provided to Pleasant Solutions without BHL's authorization;
- entered into transactions and/or agreements that contemplated conducting business in Texas—the epicenter of U.S. energy companies;
- directed its business activities to Texas companies;
- knew that the GSSI Defendants intended to, and did license and use the Geo-Direct software in Texas; and
- tailored the Geo-Direct software for Texas-based customers.

*Id.* at 8. BHL goes on to cite *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174 (5th Cir. 2013) for the proposition that "[a] plaintiff meets the minimum contacts requirement if the defendant 'delivered the product into the stream of commerce' expecting that consumers in the forum state would purchase or use the product it the forum state." *Id.* at 16–17.

Pleasant Solutions responds by arguing that BHL's purposeful-availment arguments are undercut by *Ainsworth*'s "shaky" precedential value and the narrow scope of the stream-of-commerce test. Doc. 390 at 14. According to Pleasant Solutions, the stream-of-commerce principle is of limited value outside of the products-liability context. *Id.* at 14. Rather, it argues,

the facts of this case are more analogous to *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780 (2011) and cases cited therein. *Id.* at 15–16 & n.18. Pleasant Solutions further contends that the evidence BHL includes in its Response fails to demonstrate purposeful availment. *Id.* at 18–23.

The Court disagrees. At this early stage, BHL need only make out a prima facie case of personal jurisdiction and does so with the evidence it presents. The Fifth Circuit has made it clear that, even outside the products-liability context, when a defendant company could have foreseen that its products might end up in the forum once they were placed into the stream of commerce—even when the manufacturer distributes its product through another rather than directly—the stream-of-commerce test is satisfied. *Luv N' Care*, 438 F.3d at 471. *See also Uniloc USA, Inc. v. PCI Geomatics Grp. Inc.*, 6:13-CV-912, 2015 WL 12838317, at *5 (E.D. Tex. Mar. 12, 2015), *report and recommendation adopted*, 6:13-CV-912, 2015 WL 12838318 (E.D. Tex. Mar. 31, 2015); *Feline Instincts, LLC v. Feline Future Cat Food Co., Inc.*, 4:09-CV-644-Y, 2010 WL 4942188, at *3 (N.D. Tex. Dec. 6, 2010); *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 5:08CV26, 2009 WL 1025467, at *14 (E.D. Tex. Mar. 26, 2009).

As BHL avers, the evidence indicates that Pleasant Solutions developed the Geo-Direct software product, placed it into the stream of commerce, and was aware (or should have been aware) that GSSI Defendants' were marketing it to Texas customers who would use the software to interpret wells in Texas. The Powerpoint presentation included with BHL's submissions clearly names two Texas wells, and in the mockup under "location" states: "County, Texas." Doc. 278-7 at 11, 22–23. Furthermore, the communications between GSSI and Pleasant Solutions regarding additional functionality are clearly titled "Houston Add-ons." Docs. 278-8 at 2, 278-9 at 2, 278-10 at 2. This is sufficient for the Court to conclude that Pleasant Solutions

purposefully availed itself of the forum and "the possibility of a lawsuit [in Texas] cannot come as a surprise." *Asahi*, 480 U.S. at 117, 107 S. Ct. at 1033, 94 L. Ed. 2d 92 (Brennan, J., concurring).

### b) Molloy

With regard to Molloy, BHL argues that he purposefully availed himself of the forum because he was an integral part of the Statoil project on which GSSI used BHL's software to geosteer Statoil's wells and the primary liaison between Statoil and GSSI during the development of GSSI's software. Doc. 347 at 26–29. BHL also argues that because Molloy played a key role in the development of GSSI's software, he has purposefully availed himself of the forum under the stream-of-commerce theory. *Id.* at 29–31.

Pointing to his Declaration, Molloy responds that he was never the geosteering lead for Statoil, did not act as liaison, did not use BHL's software or bitlocks, and did not train GSSI contractors on the BHL software. Doc. 391 at 11–12. He further argues that BHL's evidence actually establishes that he was only a peripheral player with attenuated and fortuitous contacts with the forum state. *Id.*

Resolving the conflicts in BHL's favor, the Court finds that the evidence BHL has submitted makes a prima facie showing of Molloy's purposeful availment of the forum. According to GSSI's own technical package, Molloy was an integral part of the team. Doc. 347-7 at 19, 21. A number of emails also appear to confirm BHL's contention that Molloy participated in the use of BHL software on the Statoil project and took the lead on storing data gleaned thereby that was later used in the development of GSSI's software. *See, e.g.*, Docs. 347-8 at 1, 347-10 at 1, 347-11 at 1.

### ii. Arise out of

Turning to the second factor in the specific-jurisdiction analysis, BHL argues that its causes of action arise out of Pleasant Solutions and Molloy's Texas contacts. Docs. 278 at 23, 347 at 31. Specifically, BHL contends that the FAC states that Pleasant Solutions and Molloy acquired and obtained confidential info belonging to Texas entities, including BHL, and used and misappropriated such information to develop the GSSI software. Docs. 278 at 23, 347 at 31. In its Sur-Reply, BHL further explains how these connections gave rise to its causes of action. Doc. 356-1.

Molloy responds to the Sur-Reply with his Motion to Strike. Doc. 357. In his Motion, he argues that BHL failed to address the second factor in the specific-jurisdiction inquiry in its Response, namely, whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts (i.e., "the nexus prong") and its attempt to retroactively do so with "4-pages of 'nexus' prong arguments . . . raised for the first time" in the Sur-Reply is improper. *Id.* at 3. Accordingly, Molloy requests the Court strike the relevant portions of the Sur-Reply. *Id.*

After reviewing the Motion and the Sur-Reply, the Court denies Molloy's Motion to Strike. The Court believes that BHL is correct when it avers that "BHL addressed the 'nexus' prong . . . in its opposition and simply expounded upon [those arguments] in its sur-reply." Doc. 363 at 1.

Finally, Despite Pleasant Solutions and Molloy's protestations that all of the development activities associated with the GSSI software occurred exclusively in Canada, BHL has articulated that its causes of action arose out of the actions of Pleasant Solutions and Molloy, which—as already discussed—were done with the knowledge (or foreseeability) that the software would be

marketed and sold to Texas clients.

### iii. Fair and Reasonable

In addressing the final factor, BHL argues that neither Pleasant Solutions nor Molloy have made a compelling case that the Court's exercise of personal jurisdiction is unfair or unreasonable. Docs. 278, 347. Pleasant Solutions does not squarely address the fairness factor, except to urge that because purposeful availment cannot be shown, "BHL's request for this [C]ourt to assert personal jurisdiction over Pleasant Solutions on the basis of specific jurisdiction isn't proper and should be rejected. Doc. 246 at 20; *See also* Doc. 390. Molloy, however, attacks the third prong of the specific-jurisdiction analysis head on, arguing that the Court's exercise of personal jurisdiction over Molloy would be unfair because (1) Molloy is a Canadian citizen and resides in Canada, making repeated travel difficult; (2) Molloy no longer works in the oil and gas industry; (3) Molloy has a "tangential relationship" to BHL's causes of action; (4) all of BHL's claims against Molloy are duplicative of its claims against GSSI; (5) BHL can obtain a full recovery from GSSI alone; and (5) excluding Molloy will not hinder BHL's ability to seek relief or this Court's job of furthering social policies. Doc. 334 at 8, 21–22.

"In determining whether or not the exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown.'" *McFadin*, 587 F.3d at 759–60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). The Court examines five factors in making this determination: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (quoting *Luv N' Care,* 438 F.3d at 473) (internal

quotation marks omitted).

Here, the Court concludes that the exercise of jurisdiction is fair and reasonable. Although both Molloy and Pleasant Solutions are Canadian citizens and travel will be necessary to their defense, "[t]he generalized difficulty in traveling to Texas is here not a burden violative of due process." *McFadin*, 587 F.3d at 764. Texas also has an interest in protecting the trade secrets of Texas companies. Further, BHL has an interest in convenient and effective relief. Finally, this Court has an interest in resolving the pending controversy and the best place to adjudicate this case is where claims against all parties can be tried together. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 594 (5th Cir. 2003) (as matter of judicial economy, a single forum for multiple defendants is best place to adjudicate controversy).

### III. Motions to Dismiss for Failure to State a Claim

All Defendants attack the FAC under Rule 12(b)(6) for failure to state a claim. Docs. 230, 232, 246, 259, 317, 334. Not all Defendants are named in each cause of action. However, because the parties that do share particular causes of action make materially identical arguments, the Court addresses Defendants' arguments claim-by-claim.

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a claim that fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint, and must view the allegations as a whole in the light most favorable to the non-movant. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned

accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

Facial plausibility is satisfied when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 555). Although the plausibility standard "is not akin to a 'probability requirement,'" there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 664–65.

## B. CFAA

BHL asserts its CFAA claim against all Defendants. Doc. 209-1 ¶¶ 93–106. In their respective Motions to Dismiss, Defendants urge that even though BHL was afforded a chance to replead its claims after this Court's last dismissal of BHL's CFAA claim, BHL's FAC "still fails to adequately satisfy the pleading requirements of Rule 12(b)(6) because its amended claim only alleges damages that are not recoverable under the CFAA." *E.g.*, Doc. 230 at 10. Specifically,

Defendants aver that the Fifth Circuit has taken a restrictive approach to determining what damages are cognizable under the CFAA and only allows recovery of costs for remedying damage to a "protected computer" or addressing an interruption in service rather than "general non-computer costs incurred in investigating the violation." *E.g.*, *id.* at 12–13. Defendants assert that BHL cannot plead that the investigation was tied to computer damages or an interruption in service because BHL's software is stand-alone in nature. *E.g.*, *id.* at 13. By taking this approach, Defendants' essentially attack BHL's claims on two grounds: for not meeting the statute's definitions of "loss" and for not alleging "computer" damage.

BHL has a private right of action under the CFAA only if it can show qualifying losses of more than $5,000 in one year. 18 U.S.C. § 1030(c)(4)(A)(i)(I). A CFAA-qualifying loss is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). "[T]he term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030. Importantly, qualifying losses also include "[a] plaintiff's internal investigation costs." *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 4:09-CV-4039, 2015 WL 1651251, at *3 (S.D. Tex. Apr. 14, 2015) (citation omitted).

Here, BHL has clearly pled internal investigation costs exceeding the $5,000 calendar-year minimum. Specifically, BHL alleges:

> BHL incurred in-house labor costs investigating, responding, assessing, and quantifying the extent and reach of the Defendants' unlawful acts. Taking hours of valuable time away from day-to-day activities, BHL's President spent approximately sixty days investigating the Defendants' unlawful acts. BHL's Vice President & Chief Developer spent ten days, the Director of Information Technology spent at least four days, and the License Administrator spent

> approximately eight days on BHL's initial investigation of the Defendants' unlawful acts. BHL's investigation included reviewing in-house files and data; collecting and reviewing email threads; retrieving and reviewing license server records from BHL's servers; reviewing support call histories; and evaluating software security measures surrounding BHL's proprietary Bitlocks and Boresight Software. BHL's initial cost of investigating its losses from the Defendants' unlawful acts exceeds $35,000. BHL continues to incur additional investigation costs during the pendency of this suit.

Doc. 209-1 ¶ 92. These allegations fall within the purview of § 1030 because they are "cost[s] of responding to an offense" and "conducting a damage assessment." 18 U.S.C. § 1030(e)(11).

To the extent that Defendants argue that BHL's software is not a CFAA-covered computer because it stands alone, this Court has already concluded that "BHL has sufficiently pled [the protected computer] element of its CFAA claim." Doc. 140 at 30. Accordingly, the Court rejects Defendants attempts to resume their attack on this settled issue. Defendants' Motions to Dismiss BHL's CFAA claims are, therefore, denied.

### C. TUTSA

Defendants argue that BHL fails to plead a cause of action under the Texas Uniform Trade Secrets Act ("TUTSA") because the allegations in the FAC begin prior to September 1, 2013—the TUTSA's effective date—and continue thereafter. *E.g.*, Doc. 230 at 14. Accordingly, Defendants urge this Court to dismiss the claims, or, in the alternative, to recognize that the claims are governed by the TUTSA's predecessor, the Texas Theft Liability Act ("TTLA"). *E.g.*, *id.* at 15. In the same breath Defendants contend:

> Likewise, BHL's [TTLA] claim for civil theft of its software and user guides (or copies thereof) does not implicate Penal Code section 31.03(a) as a matter of law. The proper construction of [BHL's misappropriation] claim is therefore for civil theft of trade secrets embodied in BHL's Software and User Guide pursuant to the Texas Theft Liability Act.

*E.g.*, *id.* at 20. In footnotes, Defendants insist that "to the extent the Court may disagree and find that BHL has adequately alleged a cause of action for theft of the Software and User Manuals

under the TTLA as applied to section 31.03 of the Penal Code, the claims would be preempted by the Copyright Act." *E.g.*, *id.* n.7.

BHL responds that its trade-secret claims "are based on the GSSI Defendants' and others' use of BHL trade secrets to develop competing geosteering software (Geo-Direct) and the Statoil Defendants' use of the Geo-Direct software with knowledge that it was developed with stolen trade secrets." Doc. 250 at 9. According to BHL, "this misappropriation by use did not occur until 2014" when GSSI began to develop the Geo-Direct software and, therefore, BHL's claims are governed by the TUTSA. *Id.* If the Court does find that some of BHL's trade secrets were misappropriated before the TUTSA's effective date, however, BHL urges that it may proceed with both TUTSA and common-law trade-secret claims. *Id.* at 10. BHL avers it may do so because some of its misappropriated trade secrets did not exist until after the TUTSA's enactment, thus "at least a portion of BHL's trade secret misappropriation claims are subject to TUTSA, and not preempted by the Copyright Act." *Id.*

Defendants' arguments betray a misunderstanding of the interplay of common-law trade-secret-misappropriation, TUTSA misappropriation, TTLA civil-theft, and TTLA theft-of-trade-secret claims. Importantly, these are separate and distinct claims. *See e.g.*, *Sisoian v. Int'l Bus. Machines Corp.*, A-14-CA-565-SS, 2014 WL 4161577, at *12 (W.D. Tex. Aug. 18, 2014) (common-law misappropriation of trade secrets and TTLA theft of trade secrets are distinct claims); *ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 704 (N.D. Tex. 2015) (TUTSA and common-law claims of misappropriation of trade secrets are distinct claims); *Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 669 (S.D. Tex. 2015) (TTLA general-theft and TTLA theft-of-trade-secret claims are distinct claims).

As the master of its complaint, BHL is free to bring any combination of these claims, but

the sufficiency of each claim will be measured individually. Because Defendants appear to conflate the elements of these various claims, it is worth reviewing the history of these claims and exploring the differences between them.

Trade-secret misappropriation began as a solely common-law claim, but with the enactment of the TTLA in 1989, the Texas Legislature provided an additional civil remedy to victims of trade-secret theft as defined in the Texas Penal Code. *Beardmore*, 131 F. Supp. 3d at 668. As a result, parties could assert both claims against the same defendant if the facts supported it. *See, e.g.*, *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 591 (5th Cir. 2015); *Intermoor Inc. v. Wilson*, 4:14-CV-01392, 2016 WL 1107083, at *2 (S.D. Tex. Mar. 22, 2016); *Beardmore*, 131 F. Supp. 3d at 666; *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 n.3 (5th Cir. 2007). In such cases, the common law governed the trade-secret-misappropriation claim, while the TTLA governed the theft-of-trade-secret claim. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 3:15-CV-4108-D, 2017 WL 635031, at *14 (N.D. Tex. Feb. 16, 2017); *Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, SA-14-CA-918-OLG, 2015 WL 12866214, at *13 (W.D. Tex. Apr. 10, 2015), *report and recommendation adopted sub nom. Raybourne & Dean Consulting v. Metrica, Inc.*, SA-14-CV-00918-OLG, 2015 WL 12867469 (W.D. Tex. May 7, 2015).

In 2013, in an effort to bring Texas law in line with the "overwhelming majority of the United States" and "provid[e] a simple legislative framework for litigating trade secret issues in Texas," the Texas Legislature enacted a modified version of the Uniform Trade Secrets Act. Texas Bill Analysis, S.B. 953, 2013 at 1. The enrolled bill, known as the TUTSA, became effective on September 1, 2013, and displaces both common-law misappropriation-of-trade-secret and TTLA theft-of-trade-secret claims. *In re Mandel*, 578 Fed. App'x 376, 384 n.8 (5th

Cir. 2014) (per curiam) (unpublished); *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 915 (W.D. Tex. 2015).

Notwithstanding the merger of TTLA theft-of-trade-secret claims and common-law misappropriation into the TUTSA framework in 2013, because the TUTSA is not retroactive, a plaintiff may still proceed with TTLA theft-of-trade secret, common-law, and TUTSA trade-secret-misappropriation claims in a single case depending on when his claims accrued and what claims the facts of his case support. *See ZeniMax*, 166 F. Supp. 3d at 704 (stating that jury instruction as to applicability of TUTSA or common law would be determined after discovery revealed when alleged misappropriation occurred). Importantly, when it comes to asserting common-law and TUTSA misappropriation claims, precise reliance on one or the other theory in the pleadings is immaterial if the elements of both are met. *See Yang Kun Chung*, 2017 WL 635031, at *14 (finding in context of 12(b)(6) motion that "Samsung's misplaced reliance on TUTSA is immaterial, however, because Samsung also sufficiently pleads the elements of Texas common law misappropriation of confidential information.").

The apparent source of confusion in this case and others like it, is that in *Spear Marketing, Inc. v. BancorpSouth Bank*, the Fifth Circuit held that theft-of-trade-secrets claims under the TTLA—as applied to software—are preempted by the Copyright Act. 791 F.3d 586, 598 (5th Cir. 2015)). In the same case, the Fifth Circuit also dealt with a misappropriation-of-trade-secrets claim, but did not address whether it was preempted. *Id.* at 600–02. Accordingly, a number of defendants have since argued that preemption also applies to TUTSA and common-law trade-secret-misappropriation claims. *See, e.g.*, *Capstone Associated Servs., Ltd. v. Organizational Strategies, Inc.*, CV H-15-3233, 2015 WL 9319239, at *2 (S.D. Tex. Dec. 23, 2015) ("Defendants argue also that the TUTSA and misappropriation of trade secrets claims are

preempted by the Copyright Act, citing *Spear[] Marketing, Inc. v. Bancorpsouth Bank*, 791 F.3d 586 (5th Cir. 2015)"). Since *Spear*, however, district courts in this Circuit have uniformly held that trade-secret-misappropriation claims—under either the TUTSA or common law—are not preempted by the Copyright Act, because such claims include an "extra element" of breach of confidentiality or improper methods, which is not equivalent to any of the exclusive rights of copyright. Doc. 140 at 7 n.3. *See, e.g.*, *Emerald City Mgmt., LLC v. Kahn*, 4:14-CV-358, 2016 WL 98751, at *18 (E.D. Tex. Jan. 8, 2016); *Capstone*, 2015 WL 9319239, at *2; *Beardmore*, 131 F. Supp. 3d at 670–71; *GlobeRanger Corp. v. Software AG USA, Inc.*, 3:11–CV–0403–B, 2015 WL 3648577, at *4 (N.D. Tex. June 11, 2015); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 786 (S.D. Tex. 2010).

Here, BHL asserts a misappropriation-of-trade-secrets claim under the TUTSA, *in addition to a TTLA civil-theft claim*, against all Defendants. Doc. 209-1 ¶¶ 117–26. Examining solely the misappropriation claim, the Court agrees with BHL that it is based on Defendants' use of BHL's trade secrets, but this conclusion is irrelevant at this juncture. BHL has sufficiently pled the elements of trade-secret misappropriation (and not TTLA civil theft of trade secrets) under either the TUTSA or common law. Moreover, because both misappropriation causes require—and BHL alleges—that the misappropriation was the result of a breach of a confidential duty or achieved by other improper methods, BHL's claim is not preempted by the Copyright Act. Defendants' Motions to Dismiss BHL's trade-secret misappropriation claim are, therefore, denied.

### D. Unjust Enrichment

BHL only asserts its claims of unjust enrichment against GSSI, Pleasant Solutions, Joy, and Tice. Doc. 209-1 ¶¶ 127–32. In their Motions to Dismiss, these four Defendants argue that

BHL's unjust enrichment claim is preempted by the Copyright Act because "BHL's allegations . . . are based entirely on BHL's software, accompanying materials (including the User Guide), and BHL's Data," which all "clearly fall within the definition of 'literary works' protected by the Copyright Act." *E.g.*, Doc. 232 at 20.

In determining whether a state-law claim is preempted by the Copyright Act, the Court applies a two-prong test. *Globeranger*, 691 F.3d at 706. First, the Court determines whether the claim falls within the subject matter of copyright. *Id.* (citing *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)). Next, the Court looks to whether the state-law claim protects rights that are "equivalent" to any of the exclusive rights protected by copyright. *Id.* (citing 17 U.S.C. § 106.) Both prongs of this test must be met for a claim to be preempted. *Id.*

The Fifth Circuit has held that software, standing alone, falls within the subject matter of the Copyright Act. *Spear Mktg.*, 791 F.3d at 603 (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995)); *GlobeRanger*, 691 F.3d at 706 (citing *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000). Nevertheless, the Court has also concluded that claims not "wholly limited to software," but that "include procedures, processes, systems, and methods of operation that are excluded from copyright protection under Section 102(b)," fall outside the scope of the Copyright Act and are not preempted. *GlobeRanger*, 691 F.3d at 709.

In its FAC, BHL alleges that "GSSI Defendants, Pleasant Solutions, Joy, and Tice derived benefits, including commercial advantage and private financial gain, from their unauthorized access, possession and use" of BHL's "Trade Secrets and Data." Doc. 209-1 ¶ 128. The FAC defines "the BHL Trade Secrets" as "[t]he Boresight Software and accompanying

materials, including the User Guide" and "Boresight Data" as "all digital documents, data, databases, communications, displays, plots, and interpretations generated using [the BHL software]." *Id.* ¶¶ 16 (trade secrets defined), 59 (data defined). These allegations are devoid of any reference to procedures, processes, systems, and methods of operation that fall outside the scope of copyright protection. Thus, the first part of the preemption test is satisfied.

With regard to equivalence, BHL's allegations are expressly based on Defendants "access, possession, and use" of BHL's software and data, not on a contractual or fiduciary breach. *See* Doc. 209-1 ¶¶ 127–32. The Court concludes that such allegations involve the same conduct protected by the Copyright Act and are, therefore, preempted. *See Genesys Software Sys., Inc. v. Comerica Bank*, 3:12-CV-2682-N, 2013 WL 12126264, at *3 (N.D. Tex. Apr. 9, 2013) (breach-of-contract claim based on defendant using software without permission preempted by Copyright Act because "allegation essentially alleges nothing other than a derogation of rights under copyright." (citation and internal quotation marks omitted)); *Schumacher Homes of Louisiana, Inc. v. R.E. Washington Constr. LLC*, 2:16-CV-00423, 2016 WL 5415083, at *3 (W.D. La. Sept. 27, 2016) ("Schumacher's unjust enrichment claim is preempted by the Copyright Act because the claim is based on the Carrolls' 'use of Schumacher Homes' copyrighted works,' and is not based on a contractual or fiduciary breach." (citation and internal quotation marks omitted)); *Tavormina v. Evening Star Prods., Inc.*, 10 F. Supp. 2d 729, 734–35 (S.D. Tex. 1998) ("Plaintiffs' claim for unjust enrichment [based on unauthorized copying and use] is preempted because it involves the same conduct that would fall under the scope of the Copyright Act."). Defendants GSSI, Pleasant Solutions, Joy, and Tice's Motions to Dismiss BHL's unjust enrichment claim are, therefore, granted. BHL may amend only if it has a claim for unjust enrichment that will not be preempted by the Copyright Act as set forth above.

### E. Negligent Misrepresentation

BHL asserts its claim for negligent misrepresentation against Statoil only. Doc. 209-1 ¶¶ 141–47. It also asserts a breach-of-contract claim against Statoil that is not challenged. *Id.* ¶ 133–40. In its Motion to Dismiss, Statoil attacks the negligent misrepresentation claim, arguing that it should be dismissed because (1) "it is barred by the operative two-year statute of limitations"; and (2) "BHL cannot simultaneously seek damages for negligent misrepresentation and breach of contract." Doc. 230 at 18–19.

BHL replies to Statoil's second argument first by clarifying that it has plead negligent misrepresentation and breach of contract as alternative claims and is not seeking damages for both. Doc. 250 at 18. The paragraph of the FAC that BHL directs the Court to in support states: "If Defendant Statoil did not breach the Agreements with BHL by failing to conduct due diligence on its third-party supplies or consultants, *in the alternative*, Statoil, in the manner set forth above, negligently misrepresented to BHL that Statoil conducts Integrity Due Diligence on all of its suppliers or consultants." Doc. 209-1 ¶ 142 (emphasis added).

Negligent misrepresentation requires an injury independent and apart from breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) (per curiam). This "independent injury doctrine" blocks parties in some circumstances from simultaneously maintaining a breach of contract and a tort claim. *Technomedia Int'l, Inc. v. Int'l Training Servs. Inc.*, CIV. A. H-09-3013, 2010 WL 3545662, at *5 (S.D. Tex. Sept. 9, 2010) (citing *Eastman Chem. Co. v. Niro, Inc.*, 80 F.Supp.2d 712, 716 (S.D. Tex. 2000); *D.S.A.*, 973 S.W.2d at 664). The rationale behind the independent-injury doctrine is that tort obligations are generally obligations imposed by law to avoid injury to others and are, therefore, distinct from and independent of the promises and intentions of parties that are embodied in a contract. *Sw.*

*Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 92 at 655 (5th Ed. 1984)). The Texas Supreme Court explained the difference thus:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*DeLanney*, 809 S.W.2d at 494 (Tex. 1991).

Accordingly, there must be both an independent injury and independent duty in order for a negligent-misrepresentation and breach-of-contract claim to coexist. *Tex. Drain Techs., Inc. v. Centennial Contractors Enters., Inc.*, CIV.A. H-14-3298, 2015 WL 4094059, at *3 (S.D. Tex. July 7, 2015). Importantly, this is the case "[e]ven when a party pleads negligent misrepresentation as an alternative theory of recovery to breach of contract." *Technomedia*, 2010 WL 3545662, at *5 (citing *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 466–67 (Tex. App.—Dallas 2006, pet. denied)).

One way in which courts determine whether the plaintiff has alleged an independent injury is by examining the nature of the plantiff's loss. *DeLanney*, 809 S.W.2d at 494. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.* (citations omitted).

In this case, BHL's claim for negligent misrepresentation expressly "repeats and realleges the allegations contained in the foregoing Paragraphs." Doc. 209-1 ¶ 141. Importantly, directly preceding the negligent-misrepresentation claim, BHL sets out its allegations in support of its breach-of-contract claim. *See id.* ¶¶ 133–40.

With regard to the breach-of-contract claim, BHL alleges that Statoil had "an express

duty to notify BHL of any consultants that Statoil wanted to hire to use the Boresight Software" and "an express obligation to ensure that the Boresight Software was not being duplicated, debugged, relocated, reverse engineered or otherwise altered in any way." *Id.* ¶ 135. BHL also cites a Statoil Annual Report in which the company publicly acknowledges its commitment to ensuring that "all suppliers and partners are screened for material integrity risks, and, if relevant, subjected to a more extensive [Integrity Due Diligence] review." *Id.* ¶ 136. According to BHL, Statoil violated these "obligations by retaining the GSSI Defendants as consultants or suppliers without conducting Statoil's mandated integrity screening and Integrity Due Diligence Process" and not limiting use of the Boresight Software to business purposes only. *Id.* ¶ 137. BHL contends that "as a direct and proximate result of Statoil's breach, BHL has been damaged . . . . [and] has incurred and will continue to incur additional damages, costs, expenses, and attorneys' fees." *Id.* ¶ 139.

In support of its negligent-misrepresentation claim, BHL cites the same Statoil Annual Report statement, and argues that "Statoil made these representations about its due diligence process knowing that it did not apply the process to every supplier or consultant." *Id.* ¶¶ 143–44. BHL avers that it "justifiably relied on Statoil's representations regarding its written process and procedures for conducting due diligence on and vetting proposed suppliers and consultants" and "as a direct and proximate result of [these] negligent misrepresentations, BHL has been proximately damaged in an amount to be determined at trial . . . . [and i]n addition . . . has incurred and will continue to incur additional damages, costs, expenses, and attorneys' fees." *Id.* ¶ 146.

In light of these allegations, the Court concludes that BHL has failed to allege an independent injury, duty, or loss as required to support its negligent-misrepresentation claim. As

a result, Statoil's Motion to Dismiss this claim is granted. However, this dismissal is without prejudice; BHL may amend its claim if it can allege independent injury. The Court need not address Statoil's additional assertion that BHL's claim is time barred.

## F. Civil Theft

In Count Eight of its FAC, BHL asserts a claim for civil theft against all Defendants under the TTLA, Tex. Civ. Prac. & Rem. Code § 134.000. Doc. 209-1 ¶¶ 148–54. In support of this claim, BHL urges that its software, bitlocks, data, and user guide constitute "property" under Texas Penal Code § 31.03 and that it is the sole owner of these materials. *Id.* ¶¶ 149–50. It further avers that Defendants "unlawfully appropriated BHL's property as the appropriation was without BHL's effective consent or the Defendants appropriated BHL's property knowing it was stolen by another." *Id.* ¶ 151.

Defendants argue that BHL's civil-theft claim must be dismissed because "BHL has failed to adequately plead a cause of action for theft of its 'property' because it has failed to allege facts regarding . . . Defendants' intent to deprive BHL of that property." *E.g.*, Doc. 232 at 14. Defendants base this assertion on the fact that BHL's FAC states that Defendants returned the bitlocks soon after BHL demanded their return and Texas Penal Code 31.03(a) requires property be withheld "permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." *E.g.*, *id.* at 14–15. Defendants further contend that "general theft can only apply to unique documents and is not applicable to copies of documents, such as BHL's User Guides or Software." *E.g.*, *id.* at 16.

The Court can easily dispense with Defendants' first argument. Under 31.03(a), the element that must be proved is not a deprivation, but the intent to deprive at the time of the taking. *Menke v. State*, 740 S.W.2d 861, 864 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).

"The fact that the deprivation later became temporary does not automatically mean that there was no intent to deprive permanently or for so long as to satisfy the statutory definition." *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (citing *Draper v. State*, 539 S.W.2d 61, 68 (Tex. Cr. App. 1976)). Rather, "[a] person acts with intent regarding his conduct or a result of his conduct when 'it is his conscious objective or desire to engage in the conduct or cause the result.'" *Ruffin v. State*, 01-14-00927-CR, 2016 WL 5266641, at *2 (Tex. App.—Houston [1st Dist.] Sept. 22, 2016, no pet.) (quoting Tex. Penal Code § 6.03(a) and citing *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)). "The intent of the accused may be inferred from his words, acts, and conduct." *Id.* (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)).

The Court finds that BHL's FAC sufficiently alleges that Defendants consciously appropriated its software, data, bitlocks, and user guide. As BHL argues, the fact that Defendants later returned these materials and the taking turned out to be temporary is irrelevant. *See* Doc. 250 at 17. Nevertheless, as this Court has recognized, "general theft only applies to unique documents and not copies of documents." *Beardmore*, 131 F. Supp. 3d at 669 (citing *Falcone v. State*, 682 S.W.2d 418, 421 (Tex. App.—Houston [1st Dist.] 1984, no pet.); *Joe N. Pratt Ins. v. Doane*, CIV.A. V–0707, 2008 WL 819011, at *13 (S.D. Tex. Mar. 20, 2008). Indeed, the consensus appears to be that if the plaintiff continues to possess and control originals of the subject property, he cannot show that the defendant possessed the requisite intent to deprive. *See e.g., In re TXCO Res., Inc.*, 475 B.R. 781, 833–34 (Bankr. W.D. Tex. 2012) ("Without Peregrine's exclusive possession or withholding of TXCO's trade secrets, it cannot be said that Peregrine intended to deprive TXCO of the data."); *Doane*, 2008 WL 819011, at *13 ("the taking of copies of Pratt's files does not implicate the Penal Code's section 31.03(a) as a matter of

law."); *Falcone*, 682 S.W.2d at 420 ("Womack testified that the prints possessed by the appellant were not his original drawings, but were merely copies . . . . Nothing in the record shows an intent to deprive Womack of his prints."). *C.f. Genesco Sports Enter., Inc. v. White*, 3:11-CV-1345-N BF, 2011 WL 6593415, at *11 (N.D. Tex. Oct. 27, 2011), *report and recommendation adopted*, 3:11-CV-1345-N BF, 2011 WL 6433704 (N.D. Tex. Dec. 22, 2011) ("Plaintiff alleged facts that Defendant acted with the intent to deprive Plaintiff of its property when Plaintiff stated that Defendant copied the confidential information to a USB device and then deleted the information from his laptop and the corporate server.").

Here, there is every indication that BHL's user guides and software were copies and BHL continued to have access to the originals. As a result, BHL cannot maintain a cause of action for civil theft for its user guides or software. BHL concedes as much, stating in its Responses that "Defendants' theft of the Boresight Software and User Guides is part of BHL's trade secrets misappropriation causes of action and thus need not also be pleaded as a civil cause of action." *E.g.*, Doc. 250 at 17. As BHL points out, because it agrees to drop the portion of its cause of action relating to the software and user guides, "Defendants' motions to dismiss on this issue are moot." *E.g.*, *id.* at 18.

The data generated by the software and the bitlocks are different, however. BHL alleges that the bitlocks at issue are physical USB devices that allow users to access its software. *See, e.g.*, Doc. 209-1 ¶ 20 (stating that BHL's bitlocks are "physically connected to a single computer to allow a licensed user to access the Boresight Software."). They are, therefore, neither "documents" nor "originals" excluded from the scope of a civil-theft action. Similarly, the data generated by BHL's software is unique because it is dependent on the well in which the software was employed. *See, e.g.*, Doc. 209-1 ¶¶ 59, 73 (defining data as the information generated using

the software on particular wells). Accordingly, Defendants Motions to Dismiss the claim for civil theft of the bitlocks and data are denied.

### G. Civil Conspiracy

In Count IX of its FAC, BHL asserts a claim for civil conspiracy against all Defendants. Doc. 209-1 ¶¶ 155–65. In support, BHL specifically avers that "Defendants had a meeting of the minds to exploit the BHL Trade Secrets in violation of the CFAA, ECPA, and the laws of the State of Texas." *Id.* ¶ 157.

In their Motions to Dismiss, Defendants argue that BHL's conspiracy claim is preempted because it is "tethered" to its civil theft and misappropriation claims. *E.g.*, Doc. 232 at 17–19. According to Defendants, because the misappropriation and civil-theft claims are preempted, BHL's conspiracy claim is likewise preempted by the Copyright Act. *E.g.*, *id.*

BHL responds that Defendants ignore the plain language of its FAC and insist that it has a viable conspiracy claim based on a number of its other claims. Doc. 250 at 20. The Court agrees. The FAC is clear: BHL asserts its conspiracy claims on the basis of Defendants' violations of a number of federal and state laws. *See* Doc. 209-1 ¶ 157. Moreover, the Court has already concluded that BHL's misappropriation-of-trade-secrets and civil-theft claims (as to the bitlocks and data) are not preempted. *See Xpel Techs. Corp. v. Am. Filter Film Distributors*, CIVA SA-08-CA175-XR, 2008 WL 3540345, at *8 (W.D. Tex. Aug. 11, 2008) ("If the conspiracy claim relates to claims that are not preempted, which in this case includes claims for fraud, misrepresentation, and misappropriation of trade secrets, the conspiracy claim should also not be preempted."). Defendants' Motions to Dismiss BHL's conspiracy claim on preemption grounds are, therefore, denied.

### H. Fees

#### i. TTLA Civil Theft

In their Motions, a number of Defendants argue that they are prevailing parties under the TTLA and should, therefore, be awarded court costs and reasonable and necessary attorney's fees under section 134.005(b) of the statute. Docs. 246 at 25; 259 at 17; 317 at 17.

BHL responds that "[t]o the extent [these Defendants are] arguing that [they are] entitled to costs and fees because BHL voluntarily narrowed the issues in this case by dropping a portion of its civil theft cause of action related to the Boresight Software and User Guides, [they] are mistaken." Doc. 326 at 23. BHL cites *Arrow Marble, LLC v. Killion*, 441 S.W.3d 702, 706–07 (Tex. App.—Houston [1st Dist.] 2014, no pet.) in support, arguing that "a defendant against whom a plaintiff voluntarily dismisses a portion of its TTLA claims is 'not considered a prevailing party or entitled to an award of attorney's fees.'" *Id.*

Section 134.005(b) of the TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). The award of fees to a prevailing party in a TTLA action is mandatory. *Arrow Marble*, 441 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)).

The TTLA does not define what it means to "prevail" in a suit. *Id.* Courts have held that the phrase applies to both a plaintiff successfully prosecuting a TTLA suit and a defendant successfully defending against one. *Peoples v. Genco Fed. Credit Union*, No. 10–09–00032–CV, 2010 WL 1797266, at *7 (Tex. App.—Waco May 5, 2010, no pet.) (mem. op.); *Brown v. Kleerekoper*, No. 01–11–00972–CV, 2013 WL 816393, *5 (Tex. App.—Houston [1st Dist.] March 5, 2013, pet. filed) (mem. op.). Prevailing parties also include those who are successful on

the TTLA claim even if they are unsuccessful on other claims and counterclaims litigated in the same suit. *Moak v. Huff*, No. 04-11-00184-CV, 2012 WL 566140, at *11 (Tex. App.—San Antonio Feb. 15, 2012, no pet.) (mem. op.).

A successful defense is one that materially alters the plaintiff's legal relationship with the defendant such as a dismissal with prejudice. *Spear Mktg.*, 2016 WL 193586, at *3 (citing *Arrow Marble*, 441 S.W.3d at 706), *aff'd*, 844 F.3d 464 (5th Cir. 2016). In contrast, a dismissal without prejudice does not satisfy the prevailing party requirement because the plaintiff is free to resurrect its claims against the defendant and may prevail at a later date. *Id.* (citing *Arrow Marble*, 441 S.W.3d at 706). Thus, a defendant who has the claims against him resolved by voluntary dismissal without prejudice generally is not considered a prevailing party or entitled to an award of attorney's fees. *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 311 (Tex. App.—Dallas 2007, no pet.); *Travel Music of San Antonio, Inc. v. Douglas*, No. 04–00–00757-CV, 2002 WL 1058527, at *3 (Tex. App.—San Antonio May 29, 2002, pet. denied) (mem. op., not designated for publication).

As already discussed in the context of BHL's TTLA claims, BHL dropped its claims for civil theft of the software and user guides. *See* Doc. 250 at 17–18. Because these claims were dropped voluntarily and the remaining two TTLA claims survive Defendants' Motions to Dismiss, the relationship between the parties has not been materially altered such that an award of fees is warranted at this time. Defendants' present request for fees is, therefore, denied.

### ii. Texas Civil Practice & Remedies Code 38.001

In its FAC, BHL seeks attorneys' fees from only Statoil under Texas Civil Practice & Remedies Code § 38.001 for Statoil's alleged "breach of the Agreements." Doc. 209-1 ¶ 166. Statoil argues that BHL's claim is barred by the plain language of § 38.001. Doc. 230 at 22–23.

According to Statoil, because it is a limited liability company and § 38.001 only enumerates "an individual or corporation" as entities that a plaintiff may recover fees from, BHL's claim must be dismissed. *Id.* In support, Statoil cites a number of Texas intermediate-court opinions that endorse its position. *Id.* at 23.

BHL responds to Statoil by first asserting that it has a contractual right of recovery that operates independently of § 38.001. Doc. 250 at 19–20. Second, BHL urges "this Court has the discretion to award attorneys' fees to BHL pursuant to several of its causes of action (including under the CFAA, ECPA, TUTSA) from any or all of the Defendants." *Id.* at 20. Finally, BHL asserts that the Statoil defendants do not cite any authority that is binding on this Court because "neither the Supreme Court of Texas nor the Fifth Circuit have ruled that a party cannot recover attorneys' fees from a limited liability company." *Id.* at 21.

BHL's first two arguments are irrelevant to the question posed by Statoil's Motion. Statoil attacks only BHL's attempt to collect fees under § 38.001. Accordingly, the Court must determine what authority there is on this question and whether it is binding on this Court.

"To determine issues of state law, we look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). However, as BHL notes, "[t]he Supreme Court of Texas has not yet addressed whether § 38.001 permits the recovery of attorney's fees from an LLC." *Hoffman v. L & M Arts*, 3:10-CV-0953-D, 2015 WL 1000838, at *4 (N.D. Tex. Mar. 6, 2015), *aff'd*, 838 F.3d 568 (5th Cir. 2016). Accordingly, "'we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.'" *Chaney*, 595 F.3d at 229 (citing *Six Flags*, 565 F.3d at 954).

In making this *Erie* determination, "decisions of intermediate state appellate courts provide guidance but are not controlling." *Hoffman*, 2015 WL 1000838, at *4 (quoting *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565–66 (5th Cir. 2005)) (internal quotation marks removed). Thus, "we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise, and we may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Chaney*, 595 F.3d 219, 229 (quoting *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 483 (5th Cir. 2008)) (internal quotation marks omitted). "Our task is to attempt to predict state law, not to create or modify it." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)) (internal quotation marks omitted).

Section 38.001 provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). One of the first courts to take up the question of whether attorney's fees may be recovered from an LLC under § 38.001 was *Hoffman v. L & M Arts*. In that case, Judge Fitzwater of the Northern District of Texas engaged in a thorough analysis of the statute and concluded:

> In sum, based on the plain meaning of the terms "individual" and "corporation," the history of § 38.001 and its predecessor, Article 2226, and the construction given to § 38.001 by Texas courts of appeals and federal courts (including judges of this court), the court makes an *Erie* prediction that the Supreme Court of Texas would hold that an LLC is neither an "individual" nor a "corporation" within the meaning of § 38.001, and that a party with a valid claim cannot recover attorney's fees from an LLC under § 38.001.

2015 WL 1000838, at *10.

On appeal, the Fifth Circuit declined to address the plaintiff's argument that she was

entitled to attorneys' fees under § 38.001(8). *Hoffman v. L & M Arts*, 838 F.3d 568, 583 n.14 (5th Cir. 2016). However, the Court concluded that *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 203 (Tex. App.—Houston [1st Dist.] Aug. 4, 2016, no pet.), wherein the Houston 14th District Court of Appeals interpreted "corporation" in § 38.001(8) to refer specifically to incorporated entities rather than generally to all businesses, "supports the district court's *Erie* guess that an LLC like L & M is not 'an individual or corporation' under section 38.001(8)." *Hoffman*, 838 F.3d at 583 n.14.

Notably, other courts to consider the issue since *Hoffman* have also overwhelmingly concluded that § 38.001 does not support recovery of attorney's fees from an LLC. *See CBIF Ltd. P'ship v. TGI Friday's Inc.*, 05-15-00157-CV, 2017 WL 1455407, at *25 (Tex. App.—Dallas Apr. 21, 2017, no. pet. h.) ("Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees."); *Siwell, Inc. v. Leverage Fin., LLC*, 5:12-CV-185-D, 2017 WL 1397818, at *2 (N.D. Tex. Apr. 18, 2017) ("[T]he court concludes that § 38.001 bars recovery of attorney's fees from Leverage, an LLC."); *J.D. Fields & Co., Inc. v. N. Am. Fabricators, L.L.C.*, CV H-15-317, 2016 WL 7912455, at *14 (S.D. Tex. Nov. 7, 2016) ("Plaintiff is not entitled to recover attorney's fees [under 38.001] from either Defendant because both Defendants are limited liability companies."); *Taylors Int'l Servs., Inc. v. Cuero Oilfield Housing, LLC*, A-16-CA-512-SS, 2016 WL 8674349, at *1 (W.D. Tex. Oct. 31, 2016) ("[A]ttorney's fees are not allowable against a limited liability company under [§ 38.001]."); *Solid Sys. CAD Servs. v. Total Risc Tech., Ltd*, 4:12-CV-03176, 2016 WL 5942935, at *3 (S.D. Tex. Oct. 13, 2016) ("Taking guidance from the analysis in *Hoffman*, and . . . *Alta Mesa Holdings, L.P. v. Ives* . . . this Court concludes that attorney's fees are not recoverable as against an LLC under Section 38.001 of the

Texas Civil Practice and Remedies Code."); *Varel Int'l Indus., L.P. v. PetroDrillbits Int'l, Inc.*, 05-14-01556-CV, 2016 WL 4535779, at *7 (Tex. App.—Dallas Aug. 30, 2016, pet. denied) ("Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees."); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App.—Houston [14th Dist.] Apr. 4, 2016, pet. denied) ("[S]ection 38.001 does not authorize the recovery of attorney's fees in a breach of contract action against an LLC."); *Chaparral Energy, LLC v. Dudley*, 4:13-CV-3540, 2015 WL 12942050, at *5 (S.D. Tex. Nov. 3, 2015) ("[T]his Court agrees with the *Hoffman* Court that LLCs are not corporations as the term is used in § 38.001."); *Dongbu USA, Inc. v. Partners in Steel Int'l, LLC*, CV H-15-1177, 2015 WL 12803707, at *2 (S.D. Tex. July 17, 2015) ("Plaintiff is not entitled to recover attorneys' fees against Defendant, a limited liability company, under 38.001.").

For the reasons already articulated by these courts, this Court likewise concludes that § 38.001 does not support a claim for attorney's fees against an LLC for breach of contract. As a result, the Court grants Statoil's Motion to Dismiss BHL's plea for attorney's fees under § 38.001 of the Texas Civil Practice and Remedies Code.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Molloy's Motion to Strike (Doc. 357) is **DENIED**. It is further

**ORDERED** that Pleasant Solutions and Molloy's Motions to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction (Docs. 246, 333, 334) are **DENIED**. Finally, it is

**ORDERED** that Defendants' Motions to Dismiss under Rule 12(b)(6) for failure to state a claim (Docs. 230, 232, 246, 259, 317, 333, 334) are **GRANTED IN PART** and **DENIED IN**

**PART**.

Specifically, Defendants' Motions to Dismiss BHL's claims for unjust enrichment and negligent misrepresentation as well as its plea for attorney's fees against Statoil pursuant to § 38.001 of the Texas Civil Practice and Remedies Code are **GRANTED**. Accordingly, BHL's claims for unjust enrichment and negligent misrepresentation are **DISMISSED WITHOUT PREJUDICE** and BHL's plea for attorney's fees under 38.001 is **DISMISSED WITH PREJUDICE**.

Defendants' 12(b)(6) Motions to Dismiss are **DENIED** in all other respects.

SIGNED at Houston, Texas, this 26th day of June, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE