UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BHL BORESIGHT, INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00627 |
| | § | |
| GEO-STEERING SOLUTIONS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above-referenced cause is Defendants Geo-Steering Solutions, Inc. and Geo-Steering Solutions USA, Inc.'s (collectively, "GSSI") Motion for Partial Summary Judgment. Doc. 253. After considering the Motion, Response, Reply, SurReply, and relevant law, the Court denies GSSI's Motion for the reasons that follow.

**I. Background**

This case arises from the parties' dispute over the genesis of GSSI's geosteering software. The facts and procedural history of this dispute have been extensively chronicled in this Court's previous Opinions and Orders and need not be repeated here except to the extent necessary to put the present Motion in context. *See* Docs. 140, 402.

After failing to resolve their dispute outside of court, on March 10, 2015, BHL filed suit against GSSI and Statoil alleging that Defendants misappropriated confidential and proprietary software that constitutes trade secrets when GSSI and Statoil accessed and used BHL's geosteering software to develop GSSI's competing software. *See* Doc. 1.

In its Original Complaint, BHL asserted claims against Statoil and GSSI for violations of the Computer Fraud and Abuse Act ("CFAA"), Electronic Communications Privacy Act ("ECPA"), unjust enrichment, and civil conspiracy. *Id.* ¶¶ 28–51, 60–64, 77–80. BHL also

alleged misappropriation of trade secrets and civil theft against GSSI and breach of contract against Statoil. *Id.* ¶¶ 52–59, 65–76. On March 29, 2016, this Court dismissed BHL's ECPA claim without prejudice to amendment but upheld its CFAA claim. Doc. 140. After receiving permission from the Court, BHL filed its First Amended Complaint ("FAC") on August 29, 2016, in which it amended its claims and added additional Defendants Pleasant Solutions, Joy, Tice, Molloy, and Zaza. Doc. 209-1.

In their pending Motion, filed October 7, 2016, Defendants seek summary judgment on BHL's CFAA and EPCA claims. BHL filed its Response in Opposition, Doc. 279, GSSI filed its Reply in Support, Doc. 296, and BHL filed a SurReply, Doc. 309-1. The Motion is now ripe for consideration.

## II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S.

871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence." (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden." (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991)). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec.*

*Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a summary judgment motion, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### III. Analysis

#### a. Use of SurReplies

Before the Court begins its analysis of the present motion, the Court must address the use of surreplies. In this case, BHL has filed a SurReply, or Motion for Leave to File a SurReply in response to almost every motion that Defendants have filed. The 11 SurReplies already considered by this Court are:

1. SurReply in Opposition to Statoil Gulf Services LLC's Reply. Doc. 56-1.
2. SurReply to the GSSI Defendants' Motion for Protective Order. Doc. 61.
3. SurReply to Defendants Geo-Steering Solution, Inc.'s and Geo-Steering Solutions, USA, Inc.'s Emergency Motion to Stay. Doc. 132.
4. SurReply to Statoil's Reply in Support of its Motion to Compel. Docs. 221-2, 258.
5. SurReply to the Statoil Defendants' Reply in Support of Their Motion to Compel. Doc. 288-1
6. SurReply to the GSSI Defendants' Reply in Support of Their Motion to Compel. Doc. 289-1.
7. SurReply Opposing Pleasant Solutions Inc.'s Motion to Dismiss. Doc. 316-1
8. SurReply to Defendant' Neil Tice's Reply in Support of His Motion to Dismiss. Doc. 306.
9. SurReply Opposing GSSI Defendants' Motion for Partial Summary Judgment on CFAA & ECPA Claims. Doc. 309-1
10. SurReply to Darrell Joy's Reply in Support of His Motion to Dismiss. Doc. 346.
11. SurReply to Byron Molloy's Reply in Support of His Motion to Dismiss. Doc. 356-1.

In an abundance of caution, the Court has granted all of BHL's opposed motions to file a surreply, accepted the unopposed surreplies without protest, and considered the arguments

contained therein. *See, e.g.*, Docs. 140, 402. However, despite BHL's assertions that its surreplies are necessary to respond to new arguments and evidence raised by Defendants, the Court has been repeatedly struck by the repetitiveness of the contentions BHL raises in its surreplies. To the extent that anything new is discussed, it is often buried in an unnecessary regurgitation of the arguments BHL raised in its previous Responses. In light of the contentious nature of this litigation and the fact that BHL now appears to file a surreply as a matter of course, the Court feels that it has become necessary to remind BHL of the proper use of the surreply.

Neither the Federal Rules nor the Local Rules provide for the right to file a surreply. Thus, "[s]urreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Weaver v. Celebration Station Props., Inc.*, No. H-14-2233, 2015 WL 1932030, at *3 (S.D. Tex. Apr. 28, 2015) (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)) (internal quotation marks omitted). *See also Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) ("[S]urreplies are heavily disfavored by courts." (internal citation and quotation marks omitted)); *Branch v. CEMEX, Inc.*, No. H-11-1953, 2012 WL 2357280, at *9 n.7 (S.D. Tex. June 20, 2012) (same), *aff'd*, 517 F. App'x 276 (5th Cir. 2013). When a surreply is allowed, it "is limited to addressing only new arguments raised for the first time by the opposing party in their reply briefing and not included in the original motion." *Branch*, 2012 WL 2357280, at *9 (quoting *Marbury Law Grp., PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010), *aff'd*, 517 F. App'x 276 (5th Cir. 2013). Thus, "[i]t is not an abuse of discretion for a court to deny a party leave to file a surreply when that party seeks only to respond to arguments—even new ones—relating to an issue the party already addressed in its response." *Austin v. Kroger Tex. L.P.*, 3:11-CV-1169-B, 2016 WL 1322248, at *2 (N.D. Tex.

Apr. 5, 2016) (collecting cases), *reconsideration denied*, 182 F. Supp. 3d 633 (N.D. Tex. 2016), *rev'd in part, vacated in part*, 16-10502, 2017 WL 1379453 (5th Cir. Apr. 14, 2017).

The Court cautions BHL against filing any more unnecessary briefs in a transparent attempt to have the last word on Defendants' Motions. The Court has a busy docket; reviewing repetitive arguments is inefficient and slows the Court's consideration of pending motions. In the future, a response (which may be accompanied by affidavits or documentary evidence) is the only document that should be filed in response to a motion. A reply to a reply (a surreply) should not be filed without requesting leave of court. *See McClyde v. Jackson*, No. H-07-4244, 2010 WL 519763, at *9 (S.D. Tex. Feb. 9, 2010), *aff'd*, 405 F. App'x 891 (5th Cir. 2010) (striking surreply filed without leave of court). Such a request must also be accompanied by a detailed recital of the necessity of the proposed surreply—something more than a conclusory assertion that Defendants raise new arguments in their Replies.

### b. Evidentiary Objections

The Court now turns to BHL's evidentiary objections. In its Response, BHL objects to the declaration of Defendant Neil Tice ("Tice") and the deposition testimony of Defendant Alfonso Zaza ("Zaza"). Doc. 279 at 8–14. The Court addresses each in turn.

### i. Neil Tice Declaration

BHL makes two main arguments with regard to the Tice Declaration. First, it argues that the Declaration is procedurally flawed because it does not comply with 28 U.S.C. § 1746. *Id.* at 8–9. Second, it argues that the Declaration is not competent summary judgment evidence because parts of it are contradicted by the record, conclusory, misleading, or inadmissible on hearsay grounds. *Id.* at 9–14.

#### 1. Compliance with § 1746

BHL asserts that Tice's Declaration fails because it does not recite the language of § 1746(1) verbatim. *Id.* at 8–9. The Court disagrees.

An unsworn declaration may substitute for an affiant's oath when it complies with 28 U.S.C. § 1746. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306–07 (5th Cir. 1988) (citations omitted). Specifically, § 1746 states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

28 U.S.C. § 1746. As the language of the statute indicates, § 1746 requires that the declaration be in "substantially" the form prescribed. *Id.* Accordingly, federal "[c]ourts considering this statute are in near-universal agreement that an unsworn affidavit must aver that the contents are 'true and correct' and do so 'under penalty of perjury.'" *McGowen v. Four Directions Dev. Corp.*, No. 1:12-CV-00109-JAW, 2014 WL 916366, at *5 (D. Me. Mar. 10, 2014) (collecting cases).

Although § 1746 contains language that complies with the statute, there is no requirement that a declaration strictly adhere to this language. In another case in this district, the court rejected an argument nearly identical to the one BHL presses. *See Powell v. Profile Design LLC*,

838 F. Supp. 2d 535, 540 (S.D. Tex. 2012). As is the case here, the out-of-country declarant in *Powell* made his declaration "under penalty of perjury that the foregoing is true and correct," but failed to include the phrase "under the laws of the United States." *Id.* The court dismissed the objection, noting that the declarant "knew he was making his Declaration under the laws of the United States" because his declaration included the case heading with the style of the case. *Id.*

Tice's Declaration includes the case heading and concludes with the statement: "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct." Doc. 253-2 at 2. Thus, like the *Powell* declaration, Tice's declaration contains both of the recitals the courts have deemed necessary for compliance with § 1746 and clearly indicates that his case is before the United States courts. Tice goes beyond the *Powell* declarant, however, because he makes his declaration "[p]ursuant to 28 U.S.C. § 1746." Doc. 253-2 at 2. While Tice may not have recited the language of § 1746(1) precisely, there is no question that Tice knew he was making his Declaration under the laws of the United States, as required by the statute, and that his declaration is in "substantially" the form required by § 1746.

Even were the Court to conclude that Tice's Declaration is defective, however, BHL's objection would fall on deaf ears. Tice filed an amended declaration with GSSI's Reply that complies with § 1746(1) to the letter. *See* Doc. 296-1. Thus, even were the Court to conclude the first Declaration was defective, BHL's objections would be overruled in light of the amended declaration. *See Bien-Aime v. Henner, Inc.*, No. 15-81478-CIV, 2016 WL 6436773, at *2 n.1 (S.D. Fla. Feb. 25, 2016) (overruling the plaintiff's objections to the defendants' declaration on the ground that they did not state they were made "under penalty of perjury 'under the laws of the United States'" because the "[d]efendants . . . filed amended declarations that comply with 28 U.S.C. § 1746.") *See also TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*, 11CV7193

DF, 2015 WL 1499173, at *2 n.1 (S.D.N.Y. Mar. 25, 2015) (considering amended declaration that remedied procedural defect of noncompliance with § 1746 in motion for summary judgment); *Wausau Underwriters Ins. Co. v. Osborne Transformer Corp.*, 11-CV-819A, 2013 WL 6328104, at *2 n.4 (W.D.N.Y. Dec. 5, 2013) (considering amended declaration that remedied procedural defect of noncompliance with § 1746 in motion to dismiss). Importantly, this amended declaration contains the same substantive content as the prior version, so there is no prejudice to BHL in accepting the new declaration. BHL's objection to the Declaration on the ground of noncompliance with § 1746 is, therefore, overruled.

2. **Competency**

BHL next objects to Tice's Declaration on the ground that he is an interested witness and his Declaration is contradicted by evidence in the record. Doc. 279 at 9–10. Again, the Court is unpersuaded by BHL's argument. To begin, as this Court has already stated in a prior Opinion and Order, the cases BHL cites for its proposition that "affidavits from interested parties, such as a party's employees, have little value," Doc. 279 at 9–10, are "nonbinding and easily distinguishable." Doc. 402 at 6. The cases that BHL cites deal with the affidavits of employees in the context of determining whether their employer's trademark has acquired secondary meaning. *See Krueger Int'l Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 609 (S.D.N.Y. 1996); *Meeker v. Meeker*, 2004 U.S. Dist. LEXIS 22708, at *23 n.4 (N.D. Cal. July 6, 2004). One type of evidence that may be used to prove secondary meaning in trademark cases is "consumer surveys showing that customers associate the trade dress with the source." *Krueger*, 915 F. Supp. at 609 (citing *Thompson Medical*, 753 F.2d at 217.) Accordingly, when a party submits the affidavits of employees who state that the product is immediately recognizable in a bid to make this showing, the courts reject the affidavits on the ground that they "have little probative value regarding the

assessment of consumer perception because they are not impartial and do not necessarily reflect the views of the purchasing public." *Meeker*, 2004 U.S. Dist. LEXIS 22708, at *23 n.4.

Outside this limited context, affidavits that are self-serving or provided by individuals with an interest in the outcome of the litigation, such as employees, will not be excluded from consideration on this basis alone. *See, e.g.*, *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co.*, 453 F. App'x 439, 443 (5th Cir. 2011) ("A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone"); *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded by* Fed. R. Evid. 103(a) *on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir. 2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional."); *Miller Expl. Co. v. Energy Drilling Co.*, 130 F. Supp. 2d 781, 785 (W.D. La. 2001), *aff'd*, 31 F. App'x 835 (5th Cir. 2002) (finding no reason to exclude any portion of declaration even though "Burns is an Energy employee and therefore has an interest in the outcome of this litigation" because "witness credibility is not relevant to the determination of a motion for summary judgment."). Rather, "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pittman*, 453 F. App'x at 443.

Because it is not the court's duty to weigh credibility on a motion for summary judgment, *Reeves*, 530 U.S. at 150, BHL's objections to Tice's Declaration on the ground that he is an interested witness and his testimony is contradicted by the record are overruled. Moreover, as will be discussed further below, such contradictions preclude summary judgment in this case.

In addition to its more generalized attacks on the Declaration in its entirety, BHL attacks three specific paragraphs of Tice's Declaration. First, BHL argues that Tice's statement in

paragraph 4 that "Conoco hired GSSI to geosteer Conoco's wells using geosteering software developed by BHL," is "conclusory and fails to set forth the relevant terms and conditions that Conoco imposed on GSSI Defendants." Doc. 279 at 10. The Court disagrees. There is nothing conclusory about this statement and the fact that Tice omits additional facts that BHL believes should have been included to paint what it believes would be a more accurate picture is irrelevant.

BHL next objects to paragraph 7 of Tice's Declaration as conclusory and misleading. Tice states: "On March 28, 2013, Kent Davis sent me a download link to the then newest version of Boresight's geosteering software." Doc. 253-2 ¶ 7. Again, the Court fails to see how this statement is conclusory or misleading. Tice is simply relating an event he personally experienced. BHL's objection is overruled.

Finally, BHL attacks paragraph 8, which states:

> On September 3, 2014, Mr. Powers, who then worked at Statoil, notified GSSI to inform them that they were required to sign a third-party consulting agreement in order to continue using the Boresight Materials. Prior to September 3, 2014, GSSI had never been informed that they need to sign a consulting agreement to use the Boresight Materials on behalf of either Conoco or Statoil.

Doc. 296-1 ¶ 8. BHL objects to this statement on hearsay grounds. Doc. 279 at 11. GSSI replies that "Mr. Tice is not offering the evidence to prove Statoil informed GSSI of Boresight's third party agreement, but rather to further support that GSSI did not intend to access the Boresight Software without authorization." Doc. 296 at 4. GSSI also urges that "Tice does in fact have personal knowledge of the statement . . . . because Mr. Tice was copied in the email communications with Statoil." *Id.* (citing Doc. 196-28).

The Court overrules BHL's objections yet again. Tice does not state that he based this knowledge on what third parties told him. Moreover, as a director of GSSI, he is certainly

capable of making a statement based on his own personal knowledge and experience regarding the extent of the communications between the two companies. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009) (concluding that defendant company's managing director's statement that the company "at no time . . . ever assisted Defendant West–Hem in negotiating a price for the blueprints with Anthony DiLorenzo, and did not decide, alone or together with anyone, what Defendant West–Hem should pay Mr. DiLorenzo for those blueprints" was a factual statement based on personal knowledge, not hearsay).

ii. **Alfonso Zaza Deposition Testimony**

BHL renews a number of the same objections to Zaza's deposition testimony that it raised against Tice's Declaration. Specifically, BHL argues that Zaza is an interested witness whose testimony is contradicted by other evidence in the record. Doc. 279 at 11–12. BHL also argues that Zaza lacks personal knowledge about BHL, thus, his "testimony about what BHL or its principals were 'aware' of is simply conjecture and speculation." *Id.* at 12. To the extent Zaza's testimony speculates as to matters not within his personal knowledge, the Court will disregard such testimony in ruling on the present Motion, but as the Court already explained in the context of Tice's Declaration, the remaining arguments (that Zaza is an interested witness and his testimony contradicts the record) are nonstarters.

c. **CFAA & EPCA Claims**

In its Motion for Partial Summary Judgment, GSSI argues that (1) there is no genuine issue of material fact that GSSI exceeded its authorization to access BHL's materials or accessed these materials without authorization; (2) GSSI lacked the requisite intent required by the CFAA and ECPA; and (3) BHL did not suffer a CFAA "loss." Doc. 253 at 21–28.

i. **Authorization**

BHL rests its CFAA claims against GSSI on three provisions of the statute: 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), and 1030(a)(6). Doc. 209-1 ¶¶ 103–105. The only provision of § 1030(a)(2) that is implicated by the facts of this case prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access," thereby "obtain[ing] information from any protected computer." *Id.* § 1030(a)(2)(C). Section 1030(a)(4) prohibits the "knowing[ ] . . . access[ of] a protected computer without authorization," and "with intent to defraud," if "such conduct furthers the intended fraud and [the violator] obtains anything of value." *Id.* § 1030(a)(4). And the relevant section of 1030(a)(6) proscribes trafficking "knowingly and with intent to defraud . . . in any password or similar information through which a computer may be accessed without authorization" when "such trafficking affects interstate or foreign commerce." *Id.* § 1030(a)(6). Similarly, the ECPA provision on which BHL relies sets forth a cause of action for "intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[ing] an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *Id.* § 2701(a)(1).

The CFAA does not define "authorization" or "authorized access." *United States v. John*, 597 F.3d 263, 271 (5th Cir. 2010) (citations omitted). However, "it does clearly differentiate between unauthorized users and those who 'exceed authorized access.'" *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (citing 18 U.S.C. §§ 1030(e)(6), 1030(a)(1), (a)(2), (a)(4)). The term "exceeds authorized access" is defined in § 1030(e)(6) and "means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Likewise, the

ECPA does not define the relevant terms, but does differentiate between unauthorized users and those who exceed authorized access. *See* 18 U.S.C. § 2701(a). Under this guidance, the Fifth Circuit has clearly stated that "[a]ccess to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded." *John*, 597 F.3d at 272.

GSSI insists that BHL's CFAA claims must fail because there is no genuine issue of material fact that GSSI was authorized to access BHL's materials. Doc. 253 at 21. In support, GSSI points to two emails in which BHL's Vice President and Lead Software Developer, Kent Davis, provided download links to the BHL software and accompanying documents on behalf of licensees Conoco and Statoil. Doc. *Id.* BHL further urges that the licensing agreement between Statoil and BHL on which BHL relies to show that GSSI exceeded the level of access authorized to third-party consultants therein is irrelevant because BHL independently granted GSSI access to the materials. *Id.* at 24.

BHL responds that it never knowingly authorized GSSI to access its trade secrets. Doc. 279 at 17–35. BHL continues that although Davis sent download links to Joy and BHL employees provided support to GSSI consultants at times, such actions were done for the benefit of BHL's licensee, Statoil, and not to authorize access to GSSI directly. *Id.* Indeed, BHL argues that BHL took such actions without the knowledge that GSSI would benefit because GSSI representatives intentionally concealed their true identities from BHL in communications seeking assistance and information from which it would normally not be privy. *Id.*

The record in this case indicates that fact issues pervade the question of whether BHL knowingly provided GSSI with access to its materials. As BHL avers, GSSI consultants were provided with Statoil email addresses. Doc. 279-17 at 57. Importantly, GSSI consultants used

these addresses in their communications with BHL, Doc. 279-22, and the record provides evidence for BHL's assertion that (on at least one occasion) Defendants deliberately misled BHL into believing they were Statoil employees. On said occasion, GSSI consultant Peter Beagle ("Pete") emailed BHL President Raymond Woodward ("Woodward") from his Statoil email address requesting an update to his BHL software, Doc. 279-24 at 2. Woodward responded asking if Pete was "employed by or affiliated in some way w[ith] GSSI," and requesting a response from Statoil management if he was. *Id.* Pete then responded: "Yes, I work with GSSI. Alfonso Zaza and Kevin Ford are my [S]tatoil supervisors." *Id.* A few hours later, Zaza then emailed Raymond stating: "Pete works for me in-house at Statoil." *Id.* at 1.

This perception that GSSI employees were actually affiliated with Statoil is buttressed by the declaration of Kent Davis. Appearing to share Woodward's confusion, he states that he thought Zaza's reference to "my guys" meant other Statoil employees. *See* Doc. 279-2 ¶ 10. ("Mr. Zaza . . . requested that I support 'his guys,' which I understood to mean other Statoil employees.").

The record also indicates that even though Neil Tice used a signature block indicating he was COO of GSSI in his communications with Zaza and Joy, Doc. 279-13 at 1, he regularly used his personal email address when he asked for—and received—new versions of the software from BHL, Doc. 279-21 at 1–2. Like Pete, he also frequently mentioned or included Statoil employee Zaza in his requests for materials. *Id.*

Because the record raises a fact question as to whether GSSI's use was authorized, the Court must deny GSSI's Motion for Partial Summary Judgment on the issue of authorization under the CFAA and ECPA.

    ii.    **Intent**

The provisions of the CFAA and ECPA that BHL invokes in its Complaint require that GSSI's access of BHL's computer be intentional. 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), and 1030(a)(6), § 2701(a). GSSI argues that it is entitled to summary judgment on these claims because the record demonstrates that it lacked the requisite intent for a CFAA or ECPA violation. Doc. 253 at 24–25. Specifically, GSSI argues that intent is lacking because it was reasonable for it to believe it had authorization to access the software because BHL sent the download links directly to Tice and other GSSI consultants. *Id.* at 25. GSSI further avers that it reasonably believed it had been granted proper authorization through Conoco and Statoil—both licensees of BHL. *Id.* Finally, GSSI argues that BHL's conduct in communicating and consulting with GSSI individuals indicates that GSSI's belief it had authorization was reasonable. *Id.* at 25–26. GSSI urges that the record corroborates its belief because there is not "a single piece of evidence supporting [BHL's] allegation that GSSI Defendants intentionally accessed without authorization or exceeded authorization." *Id.* at 26.

Contrary to GSSI's assertion, the record again raises a question of material fact regarding GSSI's intent. Tice was advised on at least two occasions that BHL would not lease the software to a consulting competitor like GSSI, Docs. 279-18 at 1; 279-26 at 1, and Joy repeatedly admitted that he was aware that BHL would not license the software to GSSI. Docs. 279-25 at 7; 279-28 at 1; 279-29 at 3. Nor could GSSI operate the software without the necessary bitlocks, which were only issued to BHL's licensees Statoil and Conoco. *See* Doc. 279-1 ¶ 12. In light of these record facts, the question of GSSI's intent when it accessed BHL's software is far from settled, and the Motion must be denied.

### iii. Loss

The CFAA requires that a plaintiff sustain a loss of at least $5,000 in order to maintain a

civil action against the violator. 18 U.S.C. §§ 1030(a)(4)(A)(i)(I), 1030(g). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). Based on this language, courts have concluded that the term "loss" encompasses only two types of harm: costs to investigate and respond to an offense, and costs incurred because of a service interruption. *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011) (citations omitted). Importantly, qualifying losses also include "[a] plaintiff's internal investigation costs." *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, No. 4:09-CV-4039, 2015 WL 1651251, at *3 (S.D. Tex. Apr. 14, 2015) (citation omitted).

GSSI argues that summary judgment is warranted here because "there is no evidence to support that Boresight has suffered any computer damage or service interruption." Doc. 253 at 26. In support, it simply reasserts the same arguments it raised in its earlier Motions to Dismiss, specifically that the software is standalone in nature and that by accessing it normally GSSI cannot have caused computer damage or a service interruption as required by the statute. *Id.* at 27.

Yet again, and for the same reasons as before, the Court rejects GSSI's argument that BHL's software is beyond the purview of the CFAA. *See* Doc. 140.[1] The record indicates that

---

[1] As this Court previously concluded:

> In light of the second phrase of the definition of "computer," courts regularly conclude that systems and devices that function with individual data processing devices are covered by the statute. *See, e.g.*, *Genesco Sports Enter., Inc. v. White*,

BHL's software was stored alternatively on BHL's download servers and other server-based platforms. *See* Docs. 279-19, 279-21, 279-38 at 1, 279-39. Moreover, BHL alleges that it sustained well over the statutory minimum in damages.[2] Accordingly, there is a genuine issue of

---

> 3:11-CV-1345-N BF, 2011 WL 6593415, at *5 (N.D. Tex. Oct. 27, 2011), *report and recommendation adopted,* 3:11-CV-1345-N BF, 2011 WL 6433704 (N.D. Tex. Dec. 22, 2011) (corporate server is protected computer); *Donahue v. Tokyo Electron Am., Inc.*, 42 F. Supp. 3d 829, 843 (W.D. Tex. 2014) (computer network is protected computer). *See also NovelPoster v. Javitch Canfield Group*, No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 106804, at *13 n.4 (N.D. Cal. Aug. 4, 2014) (online accounts are protected computer). Here, BHL's complaint alleges that the information Defendants obtained resides on computers and the computer network and its bitlock devices and software function with these covered devices. (Doc. 1 at ¶ 30, 38, 40.) Moreover, by alleging the bitlocks are USB devices (Doc. 1 at ¶ 9), the Court can infer they provide data storage functions, potentially bringing them within the ambit of the definition of a computer ("computer . . . includes any data storage facility . . . directly related to or operating in conjunction with such [data processing] device."). Without further factual development on the interplay of the software, network, bitlocks, and individual computers to negate this inference, the Court can reasonably infer that BHL's software and bitlocks fall within the CFAA's definition of a "protected computer."

Doc. 140 at 29–30.

[2] Specifically, BHL alleges:

> BHL incurred in-house labor costs investigating, responding, assessing, and quantifying the extent and reach of the Defendants' unlawful acts. Taking hours of valuable time away from day-to-day activities, BHL's President spent approximately sixty days investigating the Defendants' unlawful acts. BHL's Vice President & Chief Developer spent ten days, the Director of Information Technology spent at least four days, and the License Administrator spent approximately eight days on BHL's initial investigation of the Defendants' unlawful acts. BHL's investigation included reviewing in-house files and data; collecting and reviewing email threads; retrieving and reviewing license server records from BHL's servers; reviewing support call histories; and evaluating software security measures surrounding BHL's proprietary Bitlocks and Boresight Software. BHL's initial cost of investigating its losses from the Defendants' unlawful acts exceeds $35,000. BHL continues to incur additional investigation costs during the pendency of this suit.

Doc. 209-1 ¶ 92. These allegations fall within the purview of § 1030 because they are "cost[s] of

material fact precluding summary judgment on this element of BHL's claim as well.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that GSSI's Motion for Partial Summary Judgment is **DENIED**.

SIGNED at Houston, Texas, this 24th day of August, 2017.

                                          MELINDA HARMON
                           UNITED STATES DISTRICT JUDGE

---

responding to an offense" and "conducting a damage assessment." 18 U.S.C. § 1030(e)(11).